# Wheeling,

## ALFORD v. MOORE'S ADM'R et al.

Decided November 8, 1879.

1. Where a cause has been submitted for a final hearing upon bill, answer, depositions, &c., and upon a motion to dissolve the injunction, without objection by the plaintiff or defendants, it is not error to *then* dismiss the bill, as well as dissolve the injunction, if the record warrants the decree, even if the cause had not theretofore been formally set for hearing.

2. Section 13 of ch. 133 of the Code refers to orders made on motions to dissolve in injunction cases, where the bill must necessarily fall, if the injunction is dissolved.

3. A party will not be entertained in a court of equity on a bill seeking relief against a judgment at law which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in the court of law, unless some reason founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party be shown, why the defense was not made in that court.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Cabell, rendered on the 5th day of July, 1875, in a cause in said court then pending, wherein John Alford was plaintiff and Willson B. Moore's administrator and others were defendants, allowed upon the petition of the said Alford.

Hon. Evermont Ward, judge of the ninth judicial circuit rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

At January rules, 1875, in the circuit court of Cabell county, John Alford filed his bill in chancery against George F. Miller and C. M. Moore, administrators of W. B. Moore, deceased, and Charles L. Bowden, sheriff of Lincoln county, in which he alleged that at the May term of the circuit court of Cabell county a judgment was rendered against him for $636.87 with interest from July 9, 1858, and costs, in favor of the said administrators, and that the execution was then in the hands of said sheriff of Lincoln county ; that at the time said judgment was rendered," he was at his home in Lincoln county and confined to his bed from a severe and serious injury, which he had received from the kick of a mare some time prior to the session of said court, at which said judgment was rendered ; that he was unable, both physically and mentally, to attend to any business, and had been for a considerable period prior to the time of the rendition of said judgment; that he was so much racked with pain from said injury that he was in no condition even to give directions as to any business transactions ; that for that reason he was absent at the time said judgment was rendered." He further alleged that he had a substantial defense to said judgment, that the debt for which it had been rendered had been paid by him, and that he had a receipt therefor, or for a large part thereof, which receipt was destroyed during the late war ; that for the reason aforestated he was prevented from making any defense to the said claim in the court of law ; that he was wholly unable to go to Cabell court house, or even give the necessary instructions to counsel at the time the said judgment was rendered. He prayed an injunction to the judgment until the matters set up in the bill could be fully heard and determined ; and for general relief.

On the 3d day of September, 1874, the bill was sworn to. On the next day the injunction prayed for was granted by the circuit court judge in vacation. At Jan-

uary rules 1875, at the same time the bill was filed, the

defendant, C. M. Moore, answered the bill, denying the material allegations thereof setting up any equity, and also denying that the debt had been paid.

On the 21st day of June, 1875, in open court the plaintiff filed an amended bill, and the defendants appeared and waived the issuing of process to answer the same. The amended bill sets up more fully than the original bill the character of the judgment enjoined ; it shows that the said W. B. Moore in the county court of Cabell county, on the 5th day of November, 1858, recovered the judgment set up in the original bill, and execution issued thereon directed to W. B. Moore who was sheriff of said county, which was by him returned "not satisfied;" and that another execution issued which was returnable to February rules, 1860, directed to the same sheriff, on which execution no return was ever made ; that about the year 1868 said W. B. Moore died, and the defendants, Moore and Miller, qualified as administrators of his estate; that on the 25th day of September, 1873, a writ of *scire facias* was issued from the clerk's office of the circuit court of Cabell county, summoning the said Alford to appear at October rules, 1873, to show cause why the said administrators should not have execution on said judgment ; that on the 20th of December, 1873, the said Alford appeared at said circuit court, and pleaded to said *scire facias*, the trial of which was continued until the next term of said circuit court ; that " at the next term of said circuit court, to-wit: June, 1874, said plaintiff being detained at home, in the adjacent county of Lincoln, by reason of sickness and injuries, as set forth in his original bill, his pleas to said writ of *scire facias* were withdrawn by his counsel, reserving equity ;   *     *     *   that the injury mentioned in his said original bill was received in the latter part of March preceding the term of the Cabell county circuit court, at which said judgment against him was rendered, and was so severe as to utterly unfit him, both mentally and physically, for the transaction of any business from the date

of said injury till after said judgment was rendered as aforesaid; that but for said injury, he would have summoned his witnesses, and taken his depositions in the said suit, and thus have prepared for the trial thereof at the term at which said judgment was rendered; that said sheriff was proceeding to collect the execution issued on said judgment before said Alford had fully recovered from his said sickness, and he was scarcely able to state his case properly to his counsel, when the original bill was drawn; that the records of the original suit were in the adjoining county of Cabell, and his counsel drafted said original bill as well as he could under the circumstances considering plaintiff's health and the absence of the records; and that counsel should have stated in the original bill, that plaintiff had a receipt in full for said claim, while the execution on the original judgment was in the hands of said W. B. Moore, which fact plaintiff now alleges, and that said receipt has been lost and cannot now be produced.

He alleges also that the first execution, which went into the hands of said W. B. Moore as sheriff of Cabell county, is not among the records of the court, and calls upon the said administrators to produce it, alleging that it is in their hands. He charges that the reason why the said execution was not returned was, because it had been paid, as before charged. He charges that the said Moore, the plaintiff in the original execution, and the sheriff of Cabell county at that time were the same person; and that he had no legal right to collect the same, and that the clerk of the said circuit court of Cabell county had no legal right to direct it to him, and that all the proceedings in said execution by said Moore in his lifetime, and by his administrators since his death, are absolutely void in law.

He further charges that said Moore was the owner of a large number of executions on judgments obtained before the war, and that about the same time he had a large number, if not all said executions reissued; but he did

not reissue the one against this plaintiff, because it had been satisfied, as before charged. He further charges that the said original judgment having been recovered in the county court of Cabell county, the circuit court had no jurisdiction to revive the said judgment by *scire facias*. He prays, that the said judgment on the *scire facias* may be set aside, and a new trial awarded him, so as to enable him to make his defense to said action, &c.

On the 23d day of June, 1875, the joint and several answers of the defendants, Miller and Moore's administrators, &c., to the original and amended bills were filed, and the plaintiff replied generally thereto, "and the motion to dissolve the injunction was set down for hearing on the next morning." The said answer also contains a general demurrer to both the original and amended bills. It denies that the original executions were illegal and void; denies that the circuit court had no jurisdiction to revive the judgment on *scire facias*, and avers that if such was the fact, the plaintiff had a defense at bar upon a plea to the jurisdiction; denies his right to come into a court of equity for relief, for if his statements with regard to the rendition of said judgments are true, he had a complete remedy at law by defense that might have been there made, as the counsel who withdrew the pleas could have pleaded to the jurisdiction, as well in the absence of his client, as if he had been present. They say they know nothing of the plaintiff's alleged sickness, and call for strict proof thereof. They say they found but one execution relating to the case in the papers of the intestate, which they filed with the *scire facias*. They deny that the execution was paid by said Alford, and they also deny that he ever had any receipt therefor. They aver that they found among the papers of said W. B. Moore, the intestate, two executions in favor of Robert Alford against John Alford, and that one of them was levied by said W. B. Moore on one horse of John Alford. Both executions are filed with the answer with the endorsements thereon.

1879
Speciai Term.

Alford
v.
Moore's Adm'r,
et al.

76

There were a number of depositions taken by the plaintiff and filed in the cause; but every one of the depositions relate to the payment of the old execution, and not one, not even the deposition of the plaintiff, attempts to prove his *mental* and bodily *infirmity* at the time the judgment on the *scire facias* was rendered.

There is an affidavit of James H. Ferguson, taken on the 23d day of June, 1875, with the following caption, after stating the style of the cause : " The affidavit of James H. Ferguson, taken at the Logan House in the town of Barboursville, on the 23d day of June, 1875, upon verbal notice to the attorneys of the defendants to be read in behalf of the plaintiff in the above entitled cause, upon the motion of the defendants to dissolve the injunction." The attorney of the defendant was present and cross-examined the affiant. The affiant says that he was the attorney of Alford in the case mentioned in the bill, when the judgment on the *scire facias* was rendered ; that he had learned in some way that said Alford had been injured by the kick of a horse, and was unable to attend the trial of the said case ; that he so informed the court, and asked a continuance of the case ; but that he did not know of the said injury so as to make an affidavit of the fact, as he recollected it ; that the attorney for the said administrator insisted on a trial of the case, unless a legal ground of continuance was shown, and the said Alford being absent, affiant was not able to show legal cause for a continuance and the court refused to continue the case, and that affiant then withdrew the plea, or pleas of said Alford filed in the case, reserving equity.

The affidavit of John Alford, the plaintiff, " was taken at the same time and place and for the same purpose as the above, and the attorneys for defendants, as well as plaintiff were present." The plaintiff in his affidavit says: "I was hurt some time about the last days of March, 1874, by the kick of a mare ; I was rather seriously hurt, by being kicked right under the left

1879
Special Term.

Alford
v.
Moore's Adm'r,
et al.

shoulder blade ; I was confined to my bed and could not be moved, or turned over, or set up, by reason of the kick ; I could not sit up in a chair for about five or six weeks, I can't tell to a day ; I was not able to attend court at Cabell court house on the 10th day of June, 1874, in consequence of that kick, and for months afterwards ; I could not get to the corn field about that time in consequence of the kick ; could not travel away from my house at all at that time. It was some time in September before I was able to leave my house and attend to business ; and I was not able to attend to business then, but was forced to. I believe and know I had a good defense to the proceedings against me on the *scire facias* in which the judgment was rendered against me, and complained of in my bill and amended bill in this case. If it had not been for the kick of the mare it was my calculation to have my depositions taken and witnesses summoned, in order that I might be ready for trial of the case at the term when the judgment was rendered against me on the *scire facias,* and I would have done so."

He then speaks of the loss of his papers, among which he says was the receipt of W. B. Moore for the payment of the execution. He then says : " I think, if a new trial is granted in this case, I will be able to prove the payment of the debt for which the judgment mentioned in my bill and amended bill was rendered. I think I will be able to produce other material evidence on the new trial, in case it is granted, in addition to that which is contained in the depositions already taken."

On cross-examination, he said he had spoken to a number of witnesses prior to his being kicked by the mare ; that when he spoke to Judge Ferguson to defend him in the case, he does not know that he went into details; he told him he had paid the debt; thinks he also told him at that time that he had lost the receipt; said if he obtained a new trial, he expected to produce some executions and other records of the circuit court of Cabell county. He declined to state what other witnesses he

expected to introduce, in the event of a new trial. It nowhere in the record appears that the plaintiff asked a continuance of the case, to enable him to take further testimony therein.

On the 5th day of July, 1875, the following decree was entered in the cause: "This cause came on this day to be heard, upon the plaintiff's bill, and exhibits, the answer of C. M. Moore, the administrator of W. B. Moore, deceased, the amended bill and exhibits, the answer of George F. Miller, and C. M. Moore, administrators of W. B. Moore, deceased, to the bill and amended bill, and the exhibits therewith filed, and the replication of the plaintiff to each one of said answers, and the orders and decrees heretofore had in this cause, the depositions and papers heretofore filed, and upon the the defendant's motion to dissolve the injunction awarded the plaintiff in this cause; and being argued by counsel, on consideration whereof," &c. The decree then dissolves the injunction and dismisses the plaintiffs bills with costs.

From and to this decree, an appeal and *supersedeas* were granted.

*James H. Ferguson* and *Smith & Knight*, for the appellant, cited the following authorities:

7 Gratt. 346 ; Code, p. 633, §13; *Id.* ch. 139, §11.

*William H. Hogeman,* for appellees, cited the following authorities :

12 W. Va. 667; 3 W. Va. 136; 4 W. Va. 186 ; 5 W. Va. 377; Code, ch 133, §13; 3 W. Va. 11 ; Code, ch. 130, §23 ; 4 Gratt. 147 ; 2 Rob. (old) Prac. 212 *et seq* ; 10 Gratt. 506; *Id.* 499 ; 9 Gratt. 40 ; *Id.* 379 ; 41 Miss. 94 ; 22 Ind. 107; 4 La. Anno. 333 ; 6 N. J. L. 344 ; 45 Ill. 311 ; 38 N. H. 429.

JOHNSON, JUDGE, delivered the opinion of the Court:

It is claimed by appellant's counsel, that the cause was not finally heard, when the injunction was dissolved, but

1879
Special Term.

Alford
v.
Moore's Adm'r,
et al.

was heard upon the motion to dissolve only. The recitals of the decree contradict this position. The decree recites: "This cause came on to be heard upon the bill, amended bill, exhibits, depositions, &c., and upon the motion to dissolve the injunction." The motion to dissolve the injunction on the 23d day of June, 1875, was set down for argument on the next morning, the 24th day of June; but the record does not show it was heard on that day, and on the 5th day of July the cause was finally heard, without any objection from the plaintiff. As the answer of the defendants to the original and supplemental bills had been filed at that term, the plaintiff was entitled to a continuance of the case under the circumstances, had he asked it, but he chose not to do so, but without objection the case was finally heard; and it was proper upon a final hearing not only to dissolve the injunction but also to dismiss the bills, if the case was not made out.

In *Brakely* v. *Tuttle*, 3 W. Va. 86, it was held, that where an injunction is docketed before the cause is formally set for hearing at rules, and a motion to dissolve is made, it is not error in the court to proceed to hear the case on its merits, if the defendant is present in court and offers no objection.

In *Tilden* v. *Maslin ex'r et al.*, 5 W. Va. 377, it was held that where a cause was heard on its merits, without objection, and a demurrer to the bill had been entered, and all the material allegations of the bill were denied in the answer, and were not sustained by the proof, and the injunction was dissolved, and the bill dismissed, there was no error of which the plaintiff could complain, although it might appear in the order dissolving the injunction and dismissing the bill, that the demurrer was sustained, even if the latter was improperly done.

The cause having been submitted upon a final hearing upon bill, answer, &c., as well as on motion to dissolve, without objection by the plaintiff, it was not error to then dismiss the bills, as well as dissolve the injunction, Syllabus 1.

1879
Special Term.

Alford
v.
Moore's Adm'r,
et al.

Syllabus 2.

Syllabus 3.

if the record warranted the decree, even if the cause had not theretofore been formally set for hearing. Section 13 of chapter 133 of the Code refers to orders made upon motions merely to dissolve in injunction causes, where the bill must necessarily fall, if the injunction is dissolved. *Singleton* v. *Lewis et al.*, 6 Munf. 397; *Hough* v. *Shrewe*, 4 Munf. 490; *Pulliam* v. *Winston*, 5 Leigh 324.

The question as to the right of the circuit court of Cabell county to reverse a judgment of the county court upon *scire facias*, and the bar of the statute of limitations, which it is insisted applied, and the question whether the execution being issued in favor of W. B. Moore, and directed to the same Moore as sheriff of Cabell county, could be executed by said Moore, and whether it was void, were questions which might have been raised upon the answer to the *scire facias* at law; and those were all questions arising upon the record, and if there was anything in them, they could as well have been presented by the plaintiff's counsel in his absence as in his presence.

The question remaining to be considered is: Does the record present a proper case for the interposition of a court of equity? In *Meem* v. *Rucker*, 10 Gratt. 509, Judge Lee, with his usual force of expression, said: " Now that a party, to whom a day and opportunity have been allowed to make his defense against a demand set up against him in a court of law, but who has wholly failed to avail himself of them, will not be entertained in the court of chancery on a bill seeking relief against the judgment, which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in the court of law, unless some reason founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party, be shown why the defense was not made in that court, is a proposition which has been so repeatedly affirmed, that it has become a principle, and maxim of equity, as well settled as any other whatever." This principle has been affirmed by this Court in *Smith* v. *McClain*, 11 W. Va.

1879
Special Term.

Alford
v.
Moore's Adm'r,
et al.

654, and in *Knapp* v. *Snyder et al., supra.* We think a proper case was made by the bill, as it alleged the accident of the kick of the mare, and the consequent mental as well as physical infirmity which followed it, and which continued from more than two months before, until after the judgment was rendered. The bills both allege, that the accident so impaired the mental faculties of the plaintiff during that period, that he was incapable of attending to his defense himself, or of giving any directions to his counsel concerning it. But these allegations are not proved. The depositions of no witnesses were taken on this most material allegation of the bill, and amended bill. Even the affidavit of the plaintiff, taken in the cause, does not say one word as to the mental incapacity of plaintiff caused by the accident. There is no reason shown why his own and other depositions were not taken to sustain this allegation of the bill, which, if unproved, would be fatal to his cause. If such mental incapacity during the period alleged in the bill existed, it would have been easy to have proved it. Failing to prove it, we must conclude it did not exist; and if it had no existence, he could have sent an affidavit to the court as to his physical incapacity, which would have entitled him to a continuance of the case at law. He utterly fails to make out a case for equitable relief.

Counsel for appellants claim that so much of the printed record as appears from the word "notice," on page thirty-nine to page fifty-four inclusive, is no part of the record; and counsel for defendants had no right to have it copied; that it improperly cumbers the record, and that the party at whose instance it is done, should be compelled to pay the costs thereof, no matter how the cause is decided. Sec. 18, ch. 171, Acts of 1872–3, provides among other things, that, "of so much of the record as counsel for any party interested, or the court, shall direct, and the table of contents, the clerk shall cause eighteen copies to be printed," &c. Of course it

may sometimes be a question, whether certain matters constitute a part of the record ; and unless the party appealing applies to the court to direct that such part, as he claims is unnecessary or is no part of the record, should not be printed, and has the whole printed without such motion, he has waived his objection. The Court cannot under the circumstances of this case, require that the appellees should pay for the printing of the fifteen pages objected to, whether it is properly a part of the record or not, as the objection comes too late.

The decree of the circuit court of Cabell county, rendered in this cause on the 5th day of July, 1875, must be affirmed, with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.